.NEW . JERSEY .DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

CLARA. .G. SODEN, PETITIONER,. v. PUBLIC SERVICE TRANSPORTATION COMPANY, RESPONDENT.

Death to Employe in' Railroad-Motor Vehicle Collision—Question Whether Deceased Was at His Employment at Time of Accident—Employment Held to Begin When Employe Becomes Subject to Employer's Orders—Other' Contentions of Respondent Considered and· Dismissed.

This is a workmen's compensation case, the facts of which may be briefly. stated as follows:

Raymond Soden left his home as usual at five-fifteen A. M., August 7th, 1924, and he reported for duty at the Scuyler street garage of the Public Service .Transportation .Company, as usual, for. orders.·. Charles R. Guyer, whose duty it is to assign the·men to their various runs, directed Soden and three other chauffeurs to go with Thomas Miller, who was ordered by Guyer to take the four men in one of the company's automobiles to the French street garage, approximately one-half mile distant, where each man was to sucure a bus and drive it back to the Scuyler street garage. .This was at five forty-two A. M. Miller drove the car to French street, but instead of turning in where he should, in order to. arrive at the French street garage, he went directly past at a speed of twenty-five or thirty miles an hour, and continued directly on about one and one-quarter miles to the Pennsylvania railroad crossing. He proceeded about one-half mile further· to· a lane, where· he turned the .car· and drove back toward the centre of· town. At the railroad crossing the car was· struck by an engine and Soden and three other men men were· killed. Curtis L. Clark was the only one to survive the accident. Two days after this occurrence Clark made a statement of the various events leading up to the accident to John MacFayden, an investigator for the public service company, to which statements he took his affidavit.

Mr. Tynan, counsel for the respondent, presents several reasons for moving for a dismissal of this claim. First, that Soden was not in the employ of the company when killed. He states that it is a rule of the company that each driver's pay period begins five minutes before he is scheduled to begin his regular run from the starting point of that route; that until a driver is assigned a route, and it is within five minutes of his scheduled time for starting on the first run, he is not in the employ of the company. In this opinion I find myself unable to concur. My reading of the decisions leads me to conclude that one becomes an employe the moment the relation of master and servant become operative. Obviously, the moment one is subject to the orders of the other, this relation is established, and the courts have recognized this by holding the employer as subject to the Compensation act for a reasonable time before and after the actual money-earning hours of work. The rule of this bureau is in harmony with this, and, in effect, is that an employe is in the course of his employment under the purview of the Compensation act, as soon as he passes onto the property of the employer, for the reason that at that moment he becomes subject to the orders and authority of the master, whereas the moment previous to crossing the property line he is on the public highway and subject to no one. I am unable to subscribe to the theory that any employer is privileged to promulgate a rule nullifying a rule of the courts. Soden had arrived on the premises where he regularly reported for duty; he had so reported, and he had been given orders. I must therefore conclude that he had entered regularly into his contract of employment.

The respondent next contends that, if Soden was in the course of his employment when he left the first garage, he was no longer in the employ of the company the moment the car proceeded past French street. To analyze this it is to be remembered that Soden, with others, was placed in the care of Thomas Miller, and it was he who was controlling the car, and it became pertinent to inquire if a contract existing between two parties can be broken by the deliberate act of a

third person. The question admits of no controversy. The relation of master and servant having been established, I hold it incumbent upon the employer to show that the contract of employment was broken by one of the parties thereto. I am unable to find that the respondent has so shown. I can attach but little weight to the defendant's contention that, by his act or failure to act, the decedent became a party to the act of the driver of the car. One may ask what one should do upon finding himself carried beyond his intended destination. Should he immediately jump out, or should he be equally unwise in throwing himself upon the driver to compel him to stop and thereby precipitate a wreck? Any normal person would be apt to sit passive pending an explanation. An inquiry would, of course, be in order, and natural, and we do not know that such inquiry was not made. Its absence, however, in my judgment, does not constitute a deliberate act such as to take a person out of the course of his employment.

Testimony on behalf of the respondent was introduced to the effect that John MacFayden, an investigator for the company, prepared a written statement at the bedside of the injured man Clark on the second day after the accident, and it is contended that two of these statements, which were sworn to by Clark, disagreed with his direct testimony as given at this trial. It appears that the day prior to this accident an automobile was struck by a train at the same crossing where this accident occurred, and the written statement sets forth that the men were all talking about this prior accident when they left the first garage. On the witness-stand Clark denied the correctness of this, testifying that he, himself, was the only one who spoke of it. I am unable to attach any importance to this, inasmuch as it has not been disclosed what was said by the other men. I take it the respondent would have us conclude that the men had agreed among themselves to go out to the scene of the wreck. I cannot see how this can be so determined in the absence of any proof whatever.

The respondent also attacks the testimony of Clark on the ground that, in the written statement, he acknowledged that Soden got out of the car at the railroad crossing, whereas at this hearing he maintained that the car did not stop and nobody got out. To me the contention seems irrelevant, and I am of the opinion we should give some weight to the assertion of Clark, that his present statements are the correct ones, and that he was far from normal, mentally, on the second day after the accident, and might easily have erred in signing something written by the company's investigator.

The respondent further contends this claim should be dismissed, because the crossing of this railroad introduced into the situation a hazard not incidental to this man's employment. The merit of this argument would be obvious if Soden were the one responsible for crossing the tracks. However, it has not been so shown. The testimony discloses that the deceased was directed by one in authority to go with Tom Miller, thereby placing him in the care of Miller. This exercise of authority must, necessarily, carry with it a broadening of the hazard to whatever extent the obedience given to this authority exposed the one obeying the order.

Summing up the entire situation briefly, Soden was ordered to do a certain thing, and, in compliance with this order, he came to his death. Is it then possible to say that the authority issuing the order is without responsibility? I am unable to reach such a conclusion, and I must therefore prepare an order in favor of the petitioner.

---

A petition having been filed in the above-stated matter, praying for the compensation to which the petitioner may be entitled by virtue of the terms and provisions of an act of the legislature of the State of New Jersey entitled "An act prescribing the liability of an employer to make compensation for injuries received by the employe in the course of the employment, establishing an elective schedule of compensa-

tion and regulating procedure for the determination of liability and compensation thereunder," approved April 4th, 1911, together with the several supplements thereto and acts amendatory thereof, and a time and place for the hearing of petition having been fixed, and it appearing that said petition and the order fixing the time and place of said hearing have been duly served upon the respondent, and an answer having been filed by the said respondent, and the petitioner and respondent having appeared on the 8th day of April, 1925, the date set for the summary hearing herein, the petitioner being represented by Joseph H. Edgar and the respondent by Leonard Tynan, and testimony having been taken as presented by the parties hereto—

I do find and determine from the evidence and testimony, as follows:

First. That Raymond Soden, the petitioner, was, on April 7th, 1924, in the employ of the Public Service Transportation Company, a corporation, the respondent, as a bus driver, which employment was subject to the compensation section of chapter 95, laws of 1911:

Second. That on the aforesaid date the petitioner met with an accident arising out of and in the course of the employment, and that intoxication was not the proximate cause of said accident, nor was the injury intentionally self-inflicted.

Third. That the respondent herein had knowledge of said accident within the time prescribed in paragraph 15 of the aforesaid act.

Fourth. That the accident occurred, as follows:

Pursuant to instructions given him by regularly-authorized superior, Raymond Soden entered an automobile owned by the respondent, and Thomas Miller, a fellow-employe, was directed by the same person in authority to drive the auto containing Soden and other employes from the company's Scuyler street garage to their French street garage. For reasons not established by this hearing, Miller deviated from direct course between the two garages, and, as a result, Miller, Soden and two other employes were killed, when a locomo-

tive of the Pennsylvania Railroad Company struck the automobile.

Fifth. That the wages of the decedent were $40.95 per week.

Sixth. That the decedent left surviving him his wife, Clara G. Soden, and a son, John Edward Soden, born May 14th, 1924, who are entitled to compensation.

It is therefore on this 28th day of April, 1925, ordered that judgment final be entered in favor of the petitioner, and that the respondent make payments to the petitioner, as follows:

Compensation at the rate of $16,38 per week, being forty per cent. of the deceased's wages, for a period of three hundred weeks from the date of the accident. The amount that has become due to the date of first payment shall be paid in one lump sum. After the expiration of the three hundred weeks' period, compensation shall be paid to the petitioner for the benefit of the son at the rate of $14.33 per week until he reaches the age of sixteen years, on May 14th, 1940.

It is further ordered that the sum of $150 be paid the petitioner by the respondent on account of burial expenses, and a further sum of three hundred dollars ($300) as counsel fee to the petitioner's attorney.

W. E. STUBBS,
*Deputy Commissioner of Compensation.*